UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD G. SPOTH, *doing business as*
Lake Erie Towing and Salvage,

                                                          **DECISION**
                          Plaintiff,                          **and**
           v.                                                      **ORDER**

M/Y SANDI BEACHES
 *(HIN SERY0449D899-500DA901), its*                               09-CV-00647S(F)
 *engines, gear, generators, electronics, tackle,*
 *interior appointments, tenders, appurtenances,*
 *etc. in rem*, and
WILLIAM J. WALTERS, JR.,

                         Defendants.

---

APPEARANCES:         DeORCHIS & PARTNERS, LLP
                               Attorneys for Plaintiff
                               JOHN KENNEDY FULWEILER, of Counsel
                               61 Broadway
                               Suite 2600
                               New York, New York  10006-2802

                               LAW OFFICES OF JOHN QUACKENBUSH
                               Attorneys for Defendants
                               JOHN WALLACE. of Counsel
                               60 Lakefront Boulevard
                               Suite 102
                               Buffalo, New York 14202

                               LAW OFFICES OF ANDREA G. SAWYERS
                               Attorneys for Defendants
                               MATTHEW EARL FRENCH, of Counsel
                               31 Huntington Quadrangle
                               Suite 102S
                               Melville, New York 11747

## **JURISDICTION**

    This action was referred to the undersigned by Honorable William M. Skretny, on

October 2, 2009, for pretrial matters including disposition of non-dispositive motions.

The matter is presently before the court on Plaintiff's motion for sanctions (Doc. No. 24), filed February 25, 2010.

## **BACKGROUND and FACTS**[1]

Plaintiff Richard G. Spoth ("Spoth"), doing business as Lake Erie Towing and Salvage ("LETS"), a professional marine salvor, commenced this action on July 17, 2009, seeking a monetary award for salvage services rendered with regard to M/Y Sandi Beaches, bearing hull identification number ("HIN") SERY0449D899-500DA901, its engines, gear, generators, electronics, tackle, interior appointments, tenders, appurtenances, etc., ("Defendant Vessel"), and Defendant Vessel's owner William J. Walters, Jr. ("Walters") (together, "Defendants"). On August 18, 2009, Plaintiff filed, as a matter of course, an Amended Complaint (Doc. No. 3) ("Amended Complaint"). Answers to the Amended Complaint were filed by Walters on September 29, 2009 (Doc. No. 6), and by Defendant Vessel on November 23, 2009 (Doc. No. 14).

Plaintiff alleges it rendered salvor services to the Defendant Vessel which, on September 17, 2008, having run aground in the vicinity of Motor Island, located in the Niagara River, in New York, was in peril with its hull integrity threatened and at risk of great loss of value in the absence of any other resources willing or capable of rendering services to Defendant Vessel. Plaintiff maintains that LETS rendered, at Walters's request, salvor services that were "wholly successfully and preserved significant vessel value," Amended Complaint ¶ 16, including "preventing the discharge of bunker fuel,

---

[1] The Facts are taken from the pleadings and motion papers filed in this action.

lube oils, hydraulic oils, gray water, etc.," *id.* ¶ 18, thus entitling Plaintiff to a salvors award, whereas Defendants maintain that the Defendant vessel was never in imminent peril and that Plaintiff failed to exercise reasonable care in extricating Defendant Vessel, causing significant damage to Defendant Vessel, resulting in either diminution or total forfeiture of any salvor award.

At a December 10, 2009 scheduling conference before the undersigned, the parties agreed to provide discovery pursuant to discovery requests that had already been served and mandatory disclosures pursuant to Fed.R.Civ.P. 26(a)(1), but to otherwise forgo pursuing additional discovery pending mediation. December 10, 2009 Minute Entry (Doc. No. 19). Pursuant to this court's December 15, 2009 scheduling order (Doc. No. 20) ("December 15, 2009 Scheduling Order"), the matter was referred to mediation in accordance with § 2.1A of this court's Plan for Alternative Dispute Resolution ("ADR Plan"), and the parties were directed to confer and select a mediator by January 11, 2010, with the initial mediation session to be held by February 26, 2010. Counsel's attention was further "directed to Fed.R.Civ.P. 16(f) calling for sanctions in the event of failure to comply with any direction of this court." December 15, 2009 Order.

On January 11, 2010, the parties filed a Stipulation (Doc. No. 21), selecting Michael A. Brady, Esq. ("Brady"), as mediator, with an initial mediation session scheduled for February 10, 2010. A conflict with the mediator's schedule later required rescheduling the initial mediation session for February 17, 2010.

On January 19, 2010, Defendants served a *subpoena duces tecum* on the Boat Owners' Association of the United States ("Boat US"), an entity of which Walters is a

3

member and with which Spoth is also affiliated, seeking production by February 18, 2010, of a contract between Walters and Boat US regarding the Defendant Vessel's September 17, 2008 grounding.

Plaintiff maintains that despite repeatedly stating Plaintiff's desire that Walters attend the mediation session, it was not until just prior to the commencement of the February 17, 2010 mediation session that Plaintiff, while waiting in Brady's office, was informed by Defendants' counsel, that Walters would not be attending the mediation session in person. Although the mediation session proceeded with defense counsel and Defendants' insurance representative present, and with Walters allegedly available by telephone, the mediation was unsuccessful, allegedly as a result of Walters's failure to attend in person.[2]

By letter dated February 18, 2010 (Doc. No. 26-2) ("February 18, 2010 Letter"), Plaintiff advised the undersigned of Walters's failure to attend the mediation session, without providing notice that Walters would not be attending, and that it was Plaintiff's belief that Walters's failure to attend the mediation session rendered the session unsuccessful. Plaintiff further advised that although Plaintiff did not at that time intend to seek sanctions based on Walters's failure to attend the mediation session, Plaintiff believed such failure to attend was in bad faith and requested guidance as to how to proceed, including the possible scheduling of a settlement conference with the undersigned. Plaintiff also noted that Defendants' January 19, 2010 service of the

---

[2] In the Mediation Certification filed on February 19, 2010 (Doc. No. 23), Brady reported that the case has not settled, mediation is complete, and the case should proceed toward trial pursuant to the court's scheduling order.

4

*subpoena duces tecum* on Boat US indicates Defendants never intended to mediate in good faith.

In a letter to the undersigned dated February 22, 2010 (Doc. No. 26-3) ("February 22, 2010 Letter"), Defendants' attorney Matthew E. French, Esq. ("French"), responded to the assertions in Plaintiff's February 18, 2010 Letter, explaining that French did not learn until late on February 16, 2010, that Walters would be unable to attend the February 17, 2010 mediation session because Walters was in Maryland participating in emergency snow removal operations, but that Walters had been available by telephone during the mediation session, and one Keith Brady ("Keith Brady"), a representative with Defendant's insurance carrier with settlement authority did appear. French also disclosed to the undersigned confidential information discussed during mediation, for which Plaintiff denies ever consenting to the disclosure. Finally, Defendants maintain the fact that the *subpoena duces tecum* served on Boat US requested production of documents *after* the mediation establishes that it was served in good faith because had the case been settled at mediation, the there would have been no need for such discovery. Defendants also point to the fact that following the December 10, 2009 scheduling conference, at which the parties agreed to forgo further discovery pending mediation, Plaintiff sought to enforce an earlier subpoena served on Defendants' insurance carrier, Travelers.

On February 25, 2010, Plaintiff filed the instant motion (Doc. No. 24) ("Plaintiff's motion") seeking the scheduling of a settlement conference, and monetary sanctions consisting of the costs and attorneys' fees incurred in connection with the instant motion, as well as the costs and attorneys fees to be incurred in connection with the

5

requested settlement conference. Plaintiff also filed the Memorandum of Law in Support of Plaintiff's Motion for Sanctions (Doc. No. 25) ("Plaintiff's Memorandum"), and the Declaration of John K. Fulweiler, Esq. in Support of Plaintiff's Motion for Sanctions (Doc. No. 26) ("Fulweiler Declaration"), with attached exhibits A (Doc. No. 26-2) and B (Doc. No. 26-3) ("Fulweiler Declaration Exh(s). __").[3] On March 5, 2010, Defendants filed the Declaration of Matthew French, Esq., in Opposition to Plaintiff's Motion for Sanctions (Doc. No. 31) ("French Declaration"), with attached exhibits A through D ("French Declaration Exh(s). __"), the Affidavit of William J. Walters, Jr. (Doc. No. 32) ("Walters Affidavit"), with attached exhibit A ("Walters Affidavit Exh. A"), and the Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions (Doc. No. 33) ("Defendants' Memorandum"). On March 19, 2010, Plaintiff filed the Reply Memorandum of Law in Further Support of Plaintiff's Motion for Sanctions (Doc. No. 36) ("Plaintiff's Reply"), and the Supplemental Declaration of John K. Fulweiler, Esq., in Support of Plaintiff's Motion for Sanctions (Doc. No. 37) ("Fulweiler's Reply Declaration"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion is GRANTED in part, and DENIED in part.

## DISCUSSION

Plaintiff's motion seeks an award of costs and attorneys' fees incurred in connection with the instant motion, the scheduling of a settlement conference before

---

[3] The Fulweiler Declaration was refiled on February 25, 2010, as Doc. No. 27.

the undersigned, as well as an award of the costs and attorneys' fees to be incurred in attending the requested settlement conference. Plaintiff's Memorandum at 6. Plaintiff maintains such sanctions are warranted because Defendants, in their February 22, 2010 Letter to the undersigned, violated ADR Plan § 5.1(A), providing that the confidentiality of all communications, both written and oral, made in connection with the mediation session be maintained, by disclosing settlement terms discussed at the mediation session.[4] *Id*. at 2-4. Plaintiff specifically objects to Defendants' statement that

> The mediation concluded with a final demand of ▮▮▮▮▮▮ from plaintiff's counsel and a final offer of ▮▮▮▮▮▮ in addition to a ▮▮▮▮▮▮▮▮▮▮ to the M/Y SANDI BEACHES in the amount of approximately ▮▮▮▮▮▮ by the defense, a difference of approximately ▮▮▮▮▮▮.

*Id*. at 4 (referencing Fulweiler Declaration Exh. B; redaction in original). Plaintiff further maintains that Defendants' disclosure of the redacted information is factually incorrect, such that the challenged statement is self-serving. *Id*. at 4. According to Plaintiff, Defendants "are playing fast and loose with the rules in an attempt to frustrate and economically undermine [Plaintiff's] claim." *Id*. at 5.

Defendants argue in opposition to sanctions that the totality of the circumstances establishes that Defendants did not act in bad faith or with malice in disclosing

---

[4] Plaintiff's complaint in the February 18, 2010 Letter is that Walters failed to attend the February 17, 2010 mediation session, without providing advance notice. The ADR Plan requires all parties to personally attend mediation sessions, unless excused. ADR Plan § 5.8A.1. Excusal, however, is permitted only where the party seeking to be excused submits a letter to the Mediator with copies to all counsel and unrepresented parties, not less than ten days prior to the scheduled mediation session, demonstrating that "personal attendance would impose an extraordinary or otherwise unjustifiable hardship." ADR Plan § 5.8E. Although Walters failed to request to be excused from the mediation session in accordance with § 5.8E, Plaintiff's motion is not based on such failure but, rather, is limited to Defendants' disclosure of matters discussed at the February 17, 2010 mediation session. Plaintiff's Memorandum at 2.

7

statements made during the February 17, 2010 mediation session, and that the disclosure in no way undermined the mediation process. Defendants' Memorandum at 3-7. Defendants admit revealing in the February 22, 2010 Letter Plaintiff's final demand and Defendants' final offer, but maintain the "letter was drafted in good faith to promote a further settlement conference" rather than to frustrate mediation, and that such information has not been made public[5] or further disseminated. *Id*. at 7-8. Finally, Defendants assert that Plaintiff's description of the February 18, 2010 Letter as "an attempt to obtain a settlement conference" before the undersigned, is not a fair characterization but, rather, "open[ed] the deck hatch" by raising the question of whether the case would have settled but for Walters's absence from the mediation session, despite being available by telephone. *Id*. at 8.

In further support of sanctions, Plaintiff argues that the undisputed facts establish a *prima facie* violation of the ADR Plan, that sanctions pursuant to Rule 16(f) do not require specific intent, and that Defendants' actual notice of the confidentiality of the mediation session, in combination with Defendants' subsequent disclosure supports an award of sanctions. Plaintiff's Reply ¶¶ 1-3. Plaintiff also maintains that Defendants offer nothing in opposition to Plaintiff's motion other than an irrelevant argument that Plaintiff was not prejudiced by the disclosure. *Id*. ¶¶ 4-8.

The district court has "'inherent power' to award attorneys' fees against the

---

[5] Although an official, however unsolicited, communication to the court, the February 18, 2010 Letter was not filed with the Clerk of the Court. Strictly speaking, because judges conduct the public's business of the administration of justice, any communication to the court could become a disclosure to the public should the letter be filed or made the subject of an official request. The court notes that Defendants' February 22, 2010 Letter does not include a request that it be filed under seal or that any information be redacted prior to any filing.

offending party and his attorney when it is determined a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,'" *Agee v. Paramount Communications Inc.*, 114 F.3d 395, 398 (2d Cir. 1997) (quoting *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985)), as well as, under 28 U.S.C. § 1927 ("§ 1927"), against an attorney "who so multiplies the proceedings in any case unreasonably or vexatiously . . . ." A sanctions award under either basis of judicial authority requires "clear evidence" that the offending party's conduct was without merit and was taken for improper purposes. *Sierra Club*, 776 F.2d at 390 (inherent power); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) (§ 1927). "Like an award made pursuant to the court's inherent power, an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri*, 803 F.2d at 1273. Nor does § 1927 "'distinguish between winners and losers, or between plaintiffs and defendants'" such that a sanction award need not await the final outcome of litigation. *Id*. (quoting *Roadway Express v. Piper*, 447 U.S. 752, 762 (1980)). Rather, § 1927 "'is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned with only limiting the abuse of court processes.'" *Id*.

In the instant case, it is undisputed that the Western District of New York's ADR Plan provides that "[m]ediation is confidential and private," ADR Plan § 5.10A, such that no mediation participant may communicate any confidential information acquired during mediation without the consent of the disclosing party, as such information is considered "privileged and confidential," including

9

> [a]ll written and oral communications made in connection with or during the mediation session, any positions taken and any views of the merits of the case formed by any participant, including parties, counsel and the Mediator. . . .

ADR Plan § 5.10A.1.

Defendants do not deny disclosing communications made during the mediation session; rather, Defendants, relying on caselaw, from circuit courts other than the Second Circuit, and district courts other than those within the Second Circuit, maintain no sanctions are warranted because the disclosure was not made with malice and in bad faith, and has not resulted in any prejudice to Plaintiff. Defendants' Memorandum at 3-7. Defendants particularly rely on a five-step analysis articulated by the Fourth Circuit in *In re Anonymous*, 283 F.3d 627 (4th Cir. 2002), as establishing sanctions are not warranted. Defendants' Memorandum at 3, 5-8.

> The five relevant factors considered by the Fourth Circuit are
>
> (1) whether the mediator explained the extent of the confidentiality rules and the clarity of such explanation; (2) whether the parties executed a confidentiality agreement; (3) the extent of willfulness or bad faith involved in the breach of the confidentiality Rule; (4) the severity or adverse impact of the disclosure on the parties or the case; and (5) the severity or adverse impact of the disclosure on the mediation program.

*In re Anonymous*, 283 F.3d 627, 635 (citing Robert J. Niemic *et al.*, *Guide to Judicial Management of Cases in ADR* 104 (Federal Judicial Center 2001) (discussing various considerations regarding the propriety of sanctions).

According to Defendants, absent evidence the challenged disclosure was made in bad faith or with malice, and resulted in a material impact on the mediation program, sanctions are not warranted. Defendants' Memorandum at 3. Defendants are wrong for several reasons.

First, the Fourth Circuit's decision is not binding on this court, *see Jenkins v.*

*U.S.*, 386 F.3d 415, 418 (2d Cir. 2004) (stating district courts are bound to apply the law of the relevant circuit court), and the Second Circuit Court of Appeals has not articulated a similar test for evaluating whether to sanction a party who wrongly discloses mediation communications that are required to be kept confidential.  Second, attorneys have been sanctioned for disclosing the terms of settlement offers made during the mediation process.  *See*, *e.g.*, *Bernard v. Galen Group, Inc.*, 901 F.Supp. 778, 782-84 (S.D.N.Y. 1995) (sanctioning plaintiff's attorney for disclosing terms of two settlement offers, including specific dollar amounts, made by defendants during mediation sessions).[6]

Finally, although the Second Circuit has not specifically addressed whether an award of attorneys fees as a sanction for the violation of a court order requires a finding of willfulness or bad faith, *see Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (stating *in dicta* that "willfulness may not necessarily be a prerequisite to an award of fees and costs," although a finding of willfulness "strongly supports granting them"), to permit an award of sanctions only upon a finding of willfulness, malice, or bad faith, resulting in harm or prejudice to the opposing party would undermine the plainly stated requirement, ADR Plan § 5.10, that all communications, both written and oral, are privileged and confidential and are not to be disclosed, even by the mediator, without the parties' consent.  *See Bernard*, 901 F.Supp. at 783 (considering the offending

---

[6] Insofar as Defendants rely on *Bernard*, 901 F.Supp. at 783, for the proposition that the disclosures at issue in that case were sanctionable because the disclosing "attorney's conduct was willful and deliberate with the intent to undermine the mediation process," Defendants' Memorandum at 4, a plain reading of the case establishes the court considered that the mere disclosure, in violation of the court's order, warranted sanctions even absent bad faith.

attorney's disclosure warranted sanctions even if the attorney "genuinely believed that he needed to 'set the record straight,'" such that the disclosures were not made in bad faith). It is significant that Defendants do not deny knowledge of the ADR Plan provisions concerning the confidentiality of both oral and written communications made in the course of the mediation process, as well as that the December 15, 2009 Scheduling Order specifically directed "Counsel's attention [ ] to Fed.R.Civ.P. 16(f) calling for sanction in the event of failure to comply with any direction of this court." A careful reading of the ADR Plan establishes that its confidentiality requirement provides for no exception in the case of direct communications to the court. ADR Plan § 5.10A.2. Moreover, an assigned magistrate judge is, under the Plan, without authority to institute a settlement conference while the matter is before the mediator, absent a court order from the presiding judge, so as to avoid obvious interference with the mediation process, contrary to the purpose of the ADR process. Further, Plaintiff's request for a settlement conference was first proposed in the February 18, 2010 Letter, prior to Defendants' disclosure of mediation communications in the February 22, 2010 Letter, such that the instant motion was necessary to insure that Defendants do not also disclose any communications made during a settlement conference. 28 U.S.C. § 1927 (permitting sanctions to be awarded, against an attorney "who so multiplies the proceedings in any case unreasonably or vexatiously . . . .").

Nor does Defendants' statement that the disclosure was made to demonstrate Defendants' willingness to engage in further settlement discussions, Defendant's Memorandum at 7, support Defendants' opposition to sanctions. Given that Defendants' February 22, 2010 Letter was addressed to the undersigned, the

12

undersigned has the original, unredacted letter in his possession. A plain reading of the unredacted copy establishes that the same intended sentiment asserted by Defendants, *i.e.*, support for further settlement discussions, could have been conveyed by a direct statement that Defendants agreed with Plaintiff's request for a settlement conference, without revealing anything, particularly proposed settlement figures, that transpired at the mediation session. In fact, Defendants' strained explanation, including the irrelevant statement regarding Plaintiff's seeking production of documents pursuant to discovery requests served prior to the December 10, 2009 scheduling conference, at which it was agreed that only discovery requests that had already been served could be pursued pending the outcome of mediation, further underscores that the subject disclosures "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose as delay." *Oliveri*, 803 F.2d at 1273. Strict confidentiality regarding details of mediation discussions is the touchstone of any effective mediation program and Defendant's disregard reflects a near cavalier disregard for that important principle. *See Calka v. Kucker Kraus & Bruh*, 167 F.3d 144, 146 (2d Cir. 1999) (discussing need to maintain confidentiality of discussions and settlement offers made pursuant to Second Circuit's alternative dispute resolution plan, the Civil Appeals Management Plan ("CAMP"), because disclosure of such communications "would have a chilling effect" on CAMP conferences). Accordingly, Plaintiff is entitled to an award of sanctions in the amount of the costs of this motion, raising the question of the amount of sanctions to be imposed.

In the Fulweiler Declaration submitted in support of Plaintiff's motion, Fulweiler provides a detailed accounting of the time and costs incurred in connection with filing

the instant motion. Fulweiler Declaration ¶ 13. In particular, Plaintiff seeks 4.8 hours to be billed at his attorney rate of $ 280/hour, and 1.4 hours to be billed at a paralegal rate of $ 155/hour, postage of $ 1.56, and copying charges of $ 8.80, for total cost to file the instant motion of $ 1,354.36. In the Fulweiler Reply Declaration, Fulweiler states that Plaintiff has incurred additional attorneys fees and costs in preparing its reply in further support of Plaintiff's motion totaling $ 1,156.16, Fulweiler Reply Declaration ¶ 4, but does not provide a similar breakdown of the hours or other costs. Accordingly, Plaintiff is directed to file an affidavit providing such information **within ten (10) days** of service of this Decision and Order. Defendants shall have **ten (10) days** thereafter to file opposing affidavits.

Because the undersigned is without authority to conduct settlement proceedings, Plaintiff's request for a settlement conference must be presented to the District Judge. Further, because the costs and attorney's fees incurred by Plaintiff in attending such settlement conference are irrelevant to the merits of this motion, seeking sanctions only with regard to Defendants' disclosure of privileged and confidential communications made during the February 17, 2010 mediation session, such request is DENIED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 24), is GRANTED in part, and DENIED in part.

Plaintiff is ORDERED to file **within ten (10) days** of receipt of this Decision and Order an affidavit providing the hourly rates at which reimbursement is sought for the costs of this motion. Defendants shall have **ten (10) days** thereafter to file any response.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: July 7th , 2010
Buffalo, New York